at all. On behalf of the other one, Ms. Tiffany A. Harvey, on behalf of the lead, Mr. Edward Nolan, may it please the court. I'm going to focus on three main arguments today. I'm going to focus on three main arguments today. First of all, this case is very much like the recent case this court decided, City Mortgage v. Johnson, in that, in this case, the plaintiff refused to consider a timely HAMP application that they were required to by HAMP program rules and proceeded to sail in violation of Section 1508d5 of the Illinois Foreclosure Act. Second, Ms. Nolan's case is more compelling than the case for the defendants in Johnson because she was additionally erroneously denied her due process rights in that the court refused to grant her a 1508d5 hearing prior to sail confirmation or an evidentiary hearing thereafter. And third, the court erred under Illinois Supreme Court President Smith v. Airroom by failing to hold an evidentiary hearing under 1508d5 if there was a factual This court should reverse the lower court's decisions confirming and upholding confirmation of sale of Ms. Nolan's home. The court wouldn't hear the D5 motion because it wasn't in the file. Is that correct? That was the court's stated reason for not hearing the D5 motion. However, her motion had been filed on December 7th, whereas plaintiff's motion to confirm She did, yes, which showed that it had been filed on December 7th. What is their standard of review on that issue? We argue that the standard of review should be de novo because the facts are not in dispute in this case. I understand that, Johnson, you found abusive discretion to be the standard in a 1508d5 motion, and you further pointed out in that case that when a decision is based on error of law, that it is abusive discretion. As this court recently found in Johnson, the purpose of the HAMP program is to stem the tide of the foreclosure crisis by allowing eligible homeowners to modify unaffordable loans. 1508d5 represents one last opportunity for a homeowner to save her home and bring to the court's attention a HAMP violation, which you would not have opportunity to do earlier in the court process due to the loss mitigation and the court process generally not intersecting throughout most of the process. And in this case, the lower court ignored the protections offered by 1508d5. In Johnson, this court held that a court must set aside a sale under 1508d5 if the bank proceeded a sale without considering a HAMP application that the homeowner had submitted where the HAMP guidelines required the bank to consider that application before proceeding to sale. Our record without dispute demonstrates a 1508d5 violation, as this court found in Johnson, because Chase had received an application but did not suspend the sale. Why isn't allowing the motion for rehearing or reconsideration sufficient to resolve the The remedy 1508d5 gives is vacating the sale and prior to confirmation. So, of course, like any statute, 1508d5 should have a right to reconsideration. So the court also erred on December 21st by not reconsidering its earlier action of confirming the sale. But for 1508d5 to have its intended effect and stop a confirmation of sale, it's absolutely critical that the lower courts be required to consider a 1508d5 motion that is brought at any time prior to confirmation of sale. Does the lender, when the 1508d5 motion is heard at the time that it should, according to your argument, who has the tougher role there? Is it the lender to say why they have it? Or is it the borrower to prove that they have done what they said they've done? I mean, which one is easier, I guess, in saying for the borrower? Well, the initial burden is on the borrower under the statute. She has to prove by preponderance of the evidence that she did apply for HAMP and her home was sold in violation of the HAMP program. However, if she presents evidence sufficient to create a factual dispute, then under Supreme Court precedent in Smith v. Air Room, then the court would have to find in her favor if the plaintiff offers no evidence to rebut the proof that she has applied for HAMP and her home's been sold in violation of HAMP. Didn't the judge ask her if she had a copy of that application available on the day of December 10th? No. On the day of December 10th, the court would not hear her motion at all or deal with her motion at all, claiming that it wasn't in the court file. When did he ask for that? That was at the December 21st hearing. Did she produce it? She did not produce a copy of the application. There's nothing in 1508 D-5 or in the HAMP book that would require her to introduce as proof an actual copy of the application. That's one way she could have proved that she had applied for HAMP. What would be alternative proof? The proof in this case that she had applied for HAMP were facsimile transmission sheets to Chase's numbers. We know they're Chase's numbers because the records show in letters to her from Chase that those are the numbers that could be reached by fax. Further, there are admissions by Chase in the form of two letters attached to both of her December 2012 motions stating that they had received her initial applications. Incorrectly stating that they were too late, but stating that they had been received. And third, her sworn motions. In her sworn motions, she averred that she had, in fact, applied for HAMP on those particular dates. So in this case, there were three forms of proof that she had, in fact, made the applications she said she had. And none of these were rebutted by Chase, which didn't introduce any evidence whatsoever on the issue of HAMP on either December 10th or December 21st. So the record here shows that Chase had received an application, but they did not suspend the sale. And as this court noted in Johnson, the bank must suspend a sale if a homeowner has submitted an application at least seven business days before the scheduled sale unless an exception applies. Ms. Nolan made an application. None of the exceptions applied, but Chase proceeded to sale anyway. Under Johnson, the lower court should have set aside the sale. Some key facts for you to consider about this case. It's undisputed that Ms. Nolan submitted to Chase an application before the sale date scheduled for October 4th, 2012. For the reasons we just talked about, she introduced substantial proof that she had applied, and this was not rebutted by Chase. September 24th was eight business days before the scheduled October 4th sale, which, in fact, did not actually occur until November 29th, 2012. As this court also noted in the recent Johnson decision, the HAMP guidelines at Rule 3.3 require the bank to suspend the sale and consider a timely HAMP application, and there's just no evidence that Chase did that here. There's never been a hearing on this D5 motion, correct? Not on this D5 motion, no. Are you asking that we remand the case for that purpose, for a hearing on that motion? Yes, we're asking that the confirmation of sale be vacated so that she may have a proper 1508 D5 hearing. The prayer counsel points out in the blue brief, your prayer for relief in the brief, is to vacate the judgment of foreclosure. Are you actually asking that the judgment of foreclosure be vacated? We are not. In the initial copy of our brief, we would like to make that argument because she wasn't in default, actually, so it's another example of sort of how, as a pro se litigant at the trial level, she was sort of trot upon by the plaintiff and by the system. She had filed an answer and appearance, but a motion for default was filed, was entered against her anyway. However, upon further research, we determined that that is a final judgment and she would have had to appeal that within 30 days, so we're not moving forward on that argument. The record also shows that by fall 2012, Ms. Nolan had made several attempts to get Chase to make a decision on her previously submitted applications, and the handling of her September applications was just the latest example of Chase's failure to consider the numerous hemp applications that she had had to make, as evidenced by the sworn statements and fax transmittal records she attached to both of the December 2012 motions. Ms. Nolan objected under 15085 that the first sale of her home in 2010 was in violation of the hemp program. In 2010, in 2011, Ms. Nolan proved at motion hearing that her home had been sold in violation of hemp rules, and the lower court refused to confirm the sale. That's at the record at page 288. That sale was vacated so that Ms. Nolan could be found at the record at page 291. Ms. Nolan subsequently submitted several more applications that Chase did not consider on December 12, 2011, April 9, 2012, June 8, 2012, and August 8, 2012. Please see the record at pages 329 through 333. Ms. Nolan averred that after each application submission, she contacted Chase and was told to wait 8 to 12 weeks for processing of her application, and on recontacting them, she was told that they lost it, misplaced it, can't find it, didn't know where it was, and each time she was told to and did submit a new application. All of this evidence was unrefuted. Instead of considering her applications, Chase sought to sell her home again, which is the next thing in the file, and while Ms. Nolan objected under 15085, making the same argument she had made successfully a year ago, and although nothing had changed except her having made additional applications, the record at 319. So applying the recent Johnson case holding to this case, the lower court should have set aside the sale under 15085 so that Chase would finally consider Ms. Nolan's application. The court didn't do that, so its decision confirming sale should be reversed, and Ms. Nolan should receive the same relief this court awarded to the homeowners in Johnson, granting the motion to set aside the sale. This brings me to the second error in this case, Ms. Nolan's motion to set aside sale under 15085 and went ahead and confirmed the sale in violation of 15085 and denying her the due process right and her day in court. You're arguing again, just to clarify, that the court should have set aside the sale, but really the court should have conducted a hearing on the motion to determine whether or not the sale should be set aside. Yes. It would have been proper for the court to either set aside the sale or, again, since Chase had no evidence to rebut, offered no evidence to rebut the proof she had shown, it would have also been proper to set aside the sale. Well, if your argument is there was no hearing, how do you know what Chase would or would not have presented? Yeah, we don't know if there was a full hearing. I would have presented by what they didn't present at the brief hearing on December 21st. They didn't present any evidence on December 21st. And the motion to reconsider? The motion to make a confirmation. Yes, they did not present any evidence at all, just unsupported argument by their lawyer. But nonetheless, they've never had an opportunity, rightly or wrongly, to respond to Ms. Nolan's motion because the court didn't hear it. Yes, the court did not hear the motion to vacate sale at all and the motion to vacate confirmation. The court didn't take evidence or consider the evidence in the file, just her brief arguments. Going back to the December 10th hearing, the court twice refused to grant Ms. Nolan a continuance. Once the court brought up that her motion was not in its file, she twice asked the court for a continuance so that the motion would have time to find its way into the file. And this was denied. But the court did go ahead and grant Chase's motion for confirmation. You can sum up, Counselor. Okay. And also, she raised her 1508 D-5 objections with all speed humanly possible. It's the sale itself that creates the 1508 D-5 violation. So she would not have been able to raise her arguments until she knew for sure her home had been sold in violation of the HAMP rules. And also, in Smith v. Air Room, the court should have granted her motion if Chase did not present any evidence to contradict what she had presented. So, in summary, just like in Johnson, the violation of HAMP here was to proceed with sale without resolving Ms. Nolan's timely HAMP application. It's found in paragraph 34 of Johnson. And Ms. Nolan was additionally denied her due process rights and her rights under 1508 D-5 as the court denied her any opportunity to present her 1508 D-5 objection prior to sale and then erroneously denied her motion to vacate confirmation despite the unrefuted evidence that her home had been sold in violation of HAMP rules. Thank you. Thank you, Ms. Harvey. You will have time for rebuttal argument. Thank you. Mr. Lesniak, you may proceed. Thank you, Your Honors. Edward Lesniak for the motion. I asked a defendant if she had copies of the application submitted to plaintiff with her in court as it was not attached to the motion. Defendant did not have the documents. The court denied defendant's motion to vacate. But that's on December 21st. That is on December 21st. But let's get back to December 10th. I think that's the other date. Ms. Nolan had hers had been filed on the 7th but just didn't get into the didn't get in. So didn't get into the file for some reason. Unless you're saying that that file stamp copy was in error or was somehow fraudulent. Your Honor, I don't know. I couldn't I wouldn't speculate as to how the stamp got out there. I would take it at face value that perhaps it was filed. I don't know why it didn't make it into the court file. If she certainly had not scheduled, I think the bystander's report makes that clear, she had not scheduled her motion for hearing before the judge. So the judge refused to hear it. But Chase acknowledged they had received notice. Yes, Chase acknowledged they'd received a copy of it. And aren't they the only ones? I mean, why would the judge care if Chase had knowledge? The judge doesn't the judge can always say, well, excuse me, all right, I've heard your arguments. I'm not going to consider this and I'll give you a decision in a couple days. If the judge needs time, he or she gets time. Chase walked in the door knowing that she was challenging the confirmation. Yes, that's correct, Your Honor. But why wouldn't you go ahead? I don't I don't know why the court didn't go ahead. But why wouldn't Chase say, Your Honor, I think we need to go ahead on this. Well, Your Honor, I don't know when Chase received a But here's the key point, okay? The key point is that that motion did not have attached to it. A copy of the application Ms. Nolan maintained she provided. Furthermore, let's move on in time in terms of what Ms. Nolan was able to accomplish. Her motion that she filed on December 17th that was heard by the court on December 21st is in fact a motion under 1508D5. If you look at it, she references 1508D5. She attaches a copy of the statutory provision to her motion, but she did not comply with 1508D5. So my suggestion to Your Honor would be that she in fact did have a 1508D5 here and she failed to attach to either of her motions addressing confirmation of the sale, whether heard on December 10th or not heard until December 21st. She failed to attach a copy of her application. She failed to prove her point that she had in fact made an application. And she had an opportunity. She could have provided with her December 7th motion. She could have provided with the motion she filed on the 14th. She could have brought it to court with her on the 21st. She had several opportunities to demonstrate and prove by the preponderance of the evidence that she has submitted an application. She had letters from your company that said that she submitted an application. No, no judge. That's Ms. Nolan's interpretation. Please read the letters carefully. Ms. Nolan's interpretation is, if you read or breathe, Chase acknowledged receiving a HAMP application. Chase did not acknowledge receiving a HAMP application. The letter refers to receipt of an initial application and it says you cannot be considered for a modification under the terms of the applicable modification program. What is the applicable modification program? We don't know. There are several programs. Chase has a program called CHAMP, Chase Home Affordable Modification Program. Perhaps Ms. Nolan applied under that program. We don't know. Nothing in either of those letters acknowledges a fully completed HAMP application. And that's what Ms. Nolan needed to provide to the court. And according to... Where in the statute does it say that a copy of that should be attached or shall be attached? The statute does not specifically say. It says she has to prove by the preponderance of the evidence. It's her burden. So let's walk through it, Your Honor. She said, I provided a faxed transmittal receipt form. What is that evidence of? It's evidence of a faxed transmittal. It is absolutely no evidence of the substance of the faxed transmittal unless that application or those pages are attached. She says she has Chase's letters. She calls them HAMP letters. They are not HAMP letters. You will not find the word HAMP on any of those letters. You seem to be talking about evidence at a hearing. There was no hearing, though. Well, I think there was no hearing. Well, there was a hearing, Your Honor. It was on December 21st. So let's talk about December 10th. Okay. I mean, the judge said, I don't see your motion in the file. I'm not going to hear it. Right. Okay. So there was no hearing on December 10th. There was no hearing on her 1508D-5 petition. That took place on December 21st. Well, you really can't have one then. That's a motion to vacate the previous finding. So on the 10th, when you wanted to confirm the sale, which in fact happened, she had no hearing, correct? She had no hearing on her motion because it wasn't in the court file. Yours wasn't either. Yours was filed on December 10th, Your Honor. But that's the day of the hearing. Hers was filed three days earlier. You handed it to the judge. But I think the difference in this case, Your Honor, is that that had been scheduled. That date had been scheduled. It had been noticed up. Well, you were on the schedule for something. Yes, it had been noticed up for a sale confirmation. Well, you could have walked in the door and asked for a continuance that date. The judge shouldn't have given you a continuance if that's what you wanted, like you had on four or five previous occasions? I suppose. Certainly, it would be within the law court to give a continuance. But the point is, she did have a hearing on December 21st. Now, hearing is the taking of evidence. Was she ever sworn? I don't know if she was sworn, Your Honor. It's not stated in the bystander's report. She was asked, and she was certainly before the court, and she certainly is supposed to speak truthfully when she's acting as her own attorney, just like we are supposed to speak truthfully to the court when we're acting as an officer of the court. But how could Ms. Rutledge, I think that's the name that you gave, how could she say there wasn't a completed HAMP application if she wasn't testifying? She couldn't, and I don't believe she did. Well, I think that No, no, Your Honor. Please, let's be careful here. Ms. Rutledge didn't testify. Okay? The burden is on the mortgagor to prove by preponderance of the evidence that she filed a completed HAMP application. The question for this court is whether or not that burden was established. And we're submitting that it was not, because she did not provide a copy of the application. Why did the judge ask for it? Was the judge prompted by maybe a question from Ms. Rutledge? Well, I think the counsel pointed out that she hadn't provided a copy of the complete application, the words I just read, and the judge said, do you have it? The trial court judge said... That's on the 21st again. The 21st. We're still talking about the 10th. None of that happened on the 10th, Your Honor. I can't change the facts. Yes, none of that happened on the 10th. But my point is... What if she had the application with her on the 10th? The full completed application that she had sent on the 10th and the judges wouldn't hear it and wouldn't give her a continuance? Your Honor, that's pure speculation. Here's my point. The question is, where's the prejudice? Okay? According to her counsel, Ms. Nolan filed numerous applications from the end of 2011 into the time of the sale in late 2012. She has never produced a single one of those applications to prove and meet her burden to evidence that she had provided an application and made an application. She had an opportunity. It was not in her motion on December 7th. I don't know if she had it with her on December 10th. She may, she may not have. Any of us would be purely speculating on that. She certainly, when she had an opportunity to have her motion heard, to vacate confirmation of the sale based upon 1805, excuse me, 1508D5, which was the basis of her motion, she did not produce a copy of her application. She did not attach it to her pleading. Counsel, with all due respect, would that be more appropriately a basis to have denied her motion if she had a hearing? Her motion was denied because she couldn't even present the basic evidence. Where, where in the record on December 10th was that motion denied? The motion was not denied. On December 10th, can you point to that? I can't point to it, Judge. I can't point to it. I can't tell you she had a hearing on the 10th when she didn't. I'm not here to make something up. I'm pointing out what really happened. And what I'm pointing out is that with respect to the so-called procedural errors, the question arises as to what was the prejudice. And she did not have any prejudice from not having been heard on December 10th because she had a full opportunity to present her motion that she filed on December 17th and she had a hearing of that motion on December 21st. And she had an opportunity on that day to present all of her evidence required under 1508D5 and she did not. So if we want to focus on December 10th and stop the, the, the history of events at that day, I will concede to you she did not have a hearing on that motion. But history doesn't stop there. She did have a hearing on her 1508D5 motion. She presented virtually the identical documents. She based it on 1508D5. You said, you just said it would be speculation. So how do you know she presented The speculation, Your Honor, that I was referring to previously was the speculation that Justice Burke had raised about what if she had had her application with her on December 10th. If she had had her application with her, which I said is pure speculation, then she would not have had the opportunity to present that to the trial court. That is correct. My point is that she did have an opportunity that wasn't on December 10th. It was on December 21st and she had a full opportunity. How does our recent decision comply with or comport with your argument? Well, here's where we are, Your Honor. I disagree with counsel that this is like that case. I think in the case of 1508D5, there was in fact a full and complete application on file. So that decision went to the second part of 1508D5, which is was there a material violation by the lender because it didn't reconsider the application based upon the change in circumstances. We don't ever get to point two of the statute here. This case is really a case, I will submit, on the first point, whether she approved by the preponderance of the evidence that she had made a completed application and was entitled to the relief of 1508D5. So we don't get to the material violation issue. If she testifies under oath or, as you say, speaks truthfully to the court as a pro se litigant, that she filed that application to the best of her ability, where does it say she has to produce that document? It doesn't say she has to produce the document, but here's where we get into the discretion of the trial court. The statute says, by the preponderance of the evidence, and the court asked her, can you show me that you submitted a transmittal sheet that said she sent something to Chase? The court made its decision, and I will submit to you that that's not an abuse of discretion, which is the standard that does apply here. That's not an abuse of discretion to expect the litigant who says, I submitted a full application, to actually produce the application. That's just basic proof. Isn't that kind of the rub here, though, because we're focusing on this motion to vacate, where it is within the court's discretion on whether to vacate or not, and we review that for an abuse of discretion, whereas at the hearing, if one had taken place on the 10th, on the petition, it would be by preponderance of the evidence, and if, in fact, the Ms. Nolan had presented evidence to support her claim, the court would have been, and not that burden of preponderance of the evidence would have been too profound to find for her, correct? If she had provided enough evidence? Yes, Your Honor. Did the court make a determination by preponderance of the evidence on the 21st? Did the court? Well, I would say that the reason the trial court denied her motion was because she did not provide the proof that she had submitted an application. That's how I read it, and that's why I started out with the exact language I want the court to focus on, which is, Ms. Nolan, did you attach, you didn't attach the application. Do you have it with you? She said no, and then the court denied her motion, and I believe that the court decided at that point that she had not met her burden to establish by the preponderance of the evidence that she had submitted an application, and therefore, it denied her motion after it had a hearing on the motion that she had submitted. Thank you, Your Honor. I won't take up any more time. I see I'm out of time. Thank you. Ms. Harvey, would you like to argue? Counsel, I think we're pretty clear that your client did not have a hearing on the 10th, and counsel's argument is there was no prejudice because she had a full hearing and a full opportunity to make her case on the 21st. Why is that not the case here? For a couple of reasons. First of all, it's not clear that, it's not actually clear from the bystander's report from the December 21st court date why her motion was denied. The judge did ask about the application as counsel discussed, but the judge also agreed with plaintiff's counsel, with Ms. Ratledge, that her motion to vacate was moot. And so it's not clear if the judge was considering all of her motion to vacate, or the entire motion, because it was just one motion filed with a long title, so it's not clear if the whole motion was considered moot and he was humoring her with a little argument, or if only part of her motion was considered moot, but it could have been denied because her motion was moot, not because the court found she hadn't met her burden of proving that she had applied. Secondly, what counsel's asking you to do is to read additional obligations for litigants, many who are pro se and do not have the means to hire a lawyer into the statute. It says nowhere in 15085 that you're required to prove by any particular means that you applied for HAMP, only that you prove by preponderance of the evidence. The letter from September 28th, 2012 from Chase, it does say we received your application for a loan modification, and that with her sworn statement that she had, the application she had provided was a HAMP application, along with the faxed transmittal sheets showing that she, at her expense, had faxed 15 pages on several occasions to Chase. That's significant proof, and again, it was completely unrebutted, so I don't think we can say that she had a full hearing on her issue on December 21st, because the court clearly didn't consider any of that service warrant statements. It appears that both sides just argued that there wasn't actually any testimony taken. So she didn't have a full opportunity to present her case on December 21st, and I think the record shows that if she had, the court would have found it in her favor, because the evidence clearly supported that she had proved by preponderance of the evidence that she had made a HAMP, a timely hearing. Well, in this case, I think there should have been an evidentiary hearing where the court considered all the evidence and took exhibits, took testimony, and in this, again, if the court felt that there was a dispute in the fax. I see your point, but is it the judge's obligation to say, don't you want to present evidence, don't you have any exhibits, don't you have any documents, or is it the court to sit back and listen to what's presented and then make a decision? Is the court obligated to prompt either side as to what I'm looking for? No, it's not the court's duty to do that. I guess the error that happened here was that the court didn't really give any opportunity for either side to present exhibits. He just asked. But he did. He asked her, do you have any documents with you? No, he only asked for one specific document. The only document he was interested in. Well, that's kind of the important one. Yeah, the only document he was interested in was the application. Do you have it? And she says no. Right. He didn't ask to see any documents she did have, which was again, the fax and the transcriptions. How would he know what documents she has? He asks her do you have the application? Right. She says no. And then the hearing was over. He didn't give her a chance to present her additional evidence. I mean, what's enough opportunity to present? Do I ask you, do you have anything more? I mean, hearings are conducted all the time. Hearings are conducted all the time with no evidence. Simply argument of counsel. What's different about this? What's different in this case is that she had submitted to the court enough evidence to meet her burden. With all due respect, that's your opinion. I mean, what she presented is for the trial judge to discern whether or not or are you arguing sufficiency of the evidence? Is that a new argument that you're raising now at argument, at oral argument? Well, again, I think under the standard the Supreme Court said in error room, if there's enough evidence to raise a factual dispute, a full I think there was here. But where's that threshold? Where was enough factual issues raised? Where do you point to that? Well, that she had prepared a written sworn motion with documentary evidence of how she had applied. And instead of considering that at all, the court just looked for one specific way of proving she had considered any evidence. So to me, it's very clear from the record that she did not have a chance to present her evidence. And that if the court had considered her evidence, then the court would have either found in her favor or if the court still thought there was some factual dispute, then set it for a full hearing where both sides could present full evidence. She would only get one chance at a hearing. You only get one opportunity for a hearing on your 1508 motion, correct? Yes, you would. And in this case, again, the court also didn't let her finish. As soon as the court heard she hadn't produced that application, she was not allowed to bring to the court's attention anything else in the record. And we know that based on the bystander's record? Yes, the bystander's report makes clear that after she didn't have the application, that was the end of it. She was not allowed to present any further argument or evidence. Okay. Very good. Ms. Harvey, thank you very much. I'd like to thank both attorneys for their arguments today. And the case will be taken under advisement. We'll take a short recess.